07-3796-ag; 08-4840-ag
Luna v. Holder; Thompson v. Holder

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————————————

August Term, 2009

(Argued: June 15, 2010                    Decided: September 3, 2010)

Docket Nos. 07-3796-ag, 08-4840-ag

———————————————————

WORKLIS LUNA,

*Petitioner*,

v.

ERIC H. HOLDER, JR., United States Attorney General,

*Respondent*.

———————————————————

TASMANN ANTHONY THOMPSON,

*Petitioner*,

v.

ERIC H. HOLDER, JR., United States Attorney General,[*]

*Respondent*.

———————————————————

CALABRESI, POOLER, and CHIN, *Circuit Judges.*

———————————————————

———————————

[*] Eric H. Holder, Jr., is automatically substituted as the respondent in both of the above-captioned cases pursuant to Federal Rule of Appellate Procedure 43(c)(2).

The government has moved to dismiss the above-captioned petitions for review as untimely. Because the REAL ID Act did not divest district courts of habeas jurisdiction to consider petitioners' claims that they were prevented by circumstances beyond their control from filing timely petitions for review, we need not decide whether the 30-day filing requirement would otherwise violate the Suspension Clause of the U.S. Constitution. Therefore, while, in the circumstances of the cases before us, we lack jurisdiction to review petitioners' final orders of removal, district courts retain jurisdiction over petitioners' claims that they were unable to file a timely petition for review because of circumstances created by the government or ineffective assistance of counsel. Accordingly, petitioners may seek relief pursuant to 28 U.S.C. § 2241, and we transfer the petitions to the district court pursuant to 28 U.S.C. § 1631 so that they may have the opportunity to do so.

WORKLIS LUNA, *pro se*.

TASMANN ANTHONY THOMPSON, *pro se*.

BRENDEN P. HOGAN and JENNIFER R. KHOURI, Office of Immigration Litigation, U.S. Department of Justice, *for* Respondent.

JENNIFER CHANG NEWELL (Lee Gelernt, *on the brief)* American Civil Liberties Union, *for* amicus American Civil Liberties Union.

_____

POOLER, Circuit Judge:

Petitioners Worklis Luna and Tasmann Anthony Thompson have filed petitions for review of final orders of removal issued by the Board of Immigration Appeals ("BIA"). The government has moved to dismiss the petitions as untimely. Petitioners Luna and Thompson

concede that their petitions are untimely, but allege that circumstances beyond their control –

ineffective assistance of counsel and circumstances created by the government, respectively –

prevented them from filing timely petitions for review.

Section 1252(b)(1) of Title 8 of the United States Code requires that a "petition for

review must be filed not later than 30 days after the date of the final order of removal." This 30-

day filing requirement is jurisdictional and not subject to equitable tolling. *Ruiz-Martinez v.*

*Mukasey*, 516 F.3d 102, 105-06 (2d Cir. 2008) (citing *Malvosin v. INS*, 268 F.3d 74, 75-76 (2d

Cir. 2001)). Prior to 2005, an alien who missed the 30-day deadline could still file a petition for

a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See Luya Liu v. INS*, 293 F.3d 36, 40 (2d

Cir. 2002) (citing *INS v. St. Cyr*, 533 U.S. 289, 314 (2001)). After the enactment of the REAL

ID Act, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005), however, a petition for

review became the exclusive means available for challenging a final order of removal. 8 U.S.C.

§ 1252(a)(5), (b)(9). In *Ruiz-Martinez*, we held that the provisions of the REAL ID Act

eliminating habeas jurisdiction over final orders of removal, combined with the 30-day deadline,

did not facially violate the Suspension Clause of the U.S. Constitution. 516 F.3d at 105-06.

However, *Ruiz-Martinez* did not rule out the possibility that the 30-day deadline could

amount to a suspension of the writ as applied to an individual petitioner. In these appeals, we are

presented with the issue of whether the 30-day filing requirement violates the Suspension Clause

in cases in which the alien misses the deadline because of ineffective assistance of counsel or

circumstances created by the government. Because we conclude that the REAL ID Act did not

divest federal courts of habeas jurisdiction to consider such claims, we need not decide whether

the 30-day filing requirement would otherwise violate the Suspension Clause. Therefore, we

hold that while, in the circumstances of the cases before us, we lack jurisdiction to review

petitioners' final orders of removal, district courts retain jurisdiction over petitioners' claims that

they were unable to file a timely petition for review because of circumstances created by the

government or ineffective assistance of counsel. Accordingly, petitioners may seek relief

pursuant to 28 U.S.C. § 2241, and we transfer the petitions to the district court pursuant to 28

U.S.C. § 1631 so that they may have the opportunity to do so.

## BACKGROUND

### I. Luna v. Holder, 07-3796-ag

In December 2006, Luna, a native and citizen of the Dominican Republic, was charged in

a Notice to Appear with removability pursuant to the Immigration and Nationality Act ("INA")

Section 237(a)(2)(B)(I), based on his conviction for a controlled substance violation, and Section

237(a)(2)(A)(iii), based on his conviction for an aggravated felony. In a hearing before an

immigration judge ("IJ") in Napanoch, New York, Luna, appearing *pro se*, argued that he was a

United States citizen based on his father's naturalization. In May 2007, the IJ determined that

Luna had not derived citizenship from his father, that his removability had been established by

clear and convincing evidence, that he was statutorily ineligible for various forms of relief, and

that he had not established a *prima facie* claim for deferral of removal under the Convention

Against Torture. Accordingly, the IJ ordered Luna removed to the Dominican Republic.

Through counsel, Luna appealed to the BIA, arguing that the IJ should have terminated his

removal proceedings pending a decision on a motion to vacate his criminal conviction in state

court. By an order issued July 20, 2007, the BIA dismissed Luna's appeal.

On September 5, 2007, Luna, *pro se* and detained at the Buffalo Federal Detention

-4-

Facility in Batavia, New York, filed a petition for review of the BIA's decision. Luna sought "an enlargement of time to file a petition for review" because of his attorney's "neglect, sudden loss of interest, and giving [Luna the] false impression that he would submit all the necessary papers and continue to represent [Luna]." That same month, the government moved to dismiss the petition for review, noting that the petition had been filed sixteen days after the expiration of the 30-day filing period prescribed by 8 U.S.C. § 1252(b)(1). In October 2007, Luna responded to the motion, explaining that his former attorney had sent a letter not to Luna, but to his mother. The attorney's letter, which Luna attached to his opposition papers, stated that he did not believe that he could make any arguments in a petition for review that would warrant reversal of the BIA's decision and informed Luna that the deadline for filing a petition for review was August 20, 2007. Luna asserted that he "should have been notified by counsel at his place of detention to make sure that [Luna] received the correspondence in a timely manner, which would [have] allow[ed him] to file his petition within the thirty-day filing deadline."

## II. Thompson v. Holder, 08-4840-ag

In September 2007, Thompson, a native and citizen of Jamaica, was charged in a Notice to Appear with removability pursuant to INA Section 237(a)(2)(A)(ii), based on his convictions for two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, and Section 237(a)(2)(A)(iii), based on his conviction for an aggravated felony. Thompson, appearing *pro se* before an IJ in Hartford, Connecticut, filed no applications for relief. In January 2008, the IJ found him removable on the aggravated felony charge and ordered him removed to Jamaica. Thompson appealed to the BIA, asserting that he was denied his right to counsel and that he was innocent of the crimes underlying his convictions; the BIA dismissed

his appeal on April 28, 2008. In August 2008, the BIA denied Thompson's motion for a stay of removal pending a motion to reopen to seek CAT relief, concluding that there was little likelihood the motion would be granted. On September 9, 2008, the BIA denied Thompson's motion to reopen.

On October 1, 2008, Thompson filed a "motion asking for time to appeal," which was docketed in this Court as a petition for review; the construed petition challenged the BIA's April 28, 2008 order. Thompson explained, *inter alia*, that he had been detained in the Wyatt Detention Facility in Central Falls, Rhode Island, since June 2008,[1] and that he was "unable to get [his] legal documents at this facility[.] ITS [sic] PROHIBITED." The government subsequently filed a motion to dismiss the petition for review as untimely.[2]

### III. Amicus American Civil Liberties Union

In February and August 2009, we ordered the appointment of pro bono counsel as amicus curiae and directed briefing on the following issue:

> [W]hether there is merit to an as-applied Suspension Clause challenge for a petitioner who lacked any reasonable opportunity to file a petition for review during the 30-day filing period because of circumstances created by the government, or because of attorney error, in light of our opinion in [*Ruiz-Martinez v. Mukasey*, 516 F.3d 102 (2008)].

---

[1] Prior to June 2008, Thompson was detained at a facility in Brooklyn, Connecticut.

[2] In March 2009, it came to this Court's attention that Thompson had been removed from the United States and was living in Jamaica. In May 2009, in response to an inquiry from the Court, the government maintained that the petition should be dismissed as untimely but acknowledged that this Court retains jurisdiction over the petition despite Thompson's removal. *See Nken v. Holder*, 129 S. Ct. 1749, 1761 (2009) ("[A]liens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal.").

The American Civil Liberties Union ("ACLU")'s Immigrants' Rights Project was subsequently appointed as amicus counsel in both appeals.

## DISCUSSION

## I.

The Suspension Clause of the U.S. Constitution provides that "the Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. "Because of that Clause, some judicial intervention in deportation cases is unquestionably required by the Constitution." *St. Cyr*, 533 U.S. at 300 (internal quotation marks omitted). However, "the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus." *Ruiz-Martinez*, 516 F.3d at 114 (quoting *Swain v. Pressley*, 430 U.S. 372, 381 (1977)); *Boumediene v. Bush*, 553 U.S. 723, ___, 128 S. Ct. 2229, 2262 (2008) ("[T]he question becomes whether the statute stripping jurisdiction to issue the writ avoids the Suspension Clause mandate because Congress has provided adequate substitute procedures for habeas corpus.").

In the immigration context, Congress has long sought to limit habeas review while at the same time ensuring that aliens have an alternate forum in which to seek review of final orders of removal. Prior to 1996, an alien could challenge a removal order either in a petition for review filed in the court of appeals or in a petition for a writ of habeas corpus in the district court. *See Ruiz-Martinez*, 516 F.3d at 113. In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), both of which amended the jurisdictional provisions of the INA,

8 U.S.C. § 1101, *et seq.* Section 401 of AEDPA, entitled "Elimination of Custody Review by Habeas Corpus," repealed, *inter alia*, 8 U.S.C. § 1105a(a)(10) (1994), which had provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." Section 306(a)(1) of IIRIRA provided that final orders of removal would be subject to judicial review pursuant to the procedure governing review of final agency orders in 28 U.S.C. § 158. *See* 8 U.S.C. § 1252(a)(1). Section 306(b)(9) contained a consolidation provision known as a "zipper" clause, *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999), which consolidated all "[j]udicial review of all questions of law and fact . . . arising from" removal proceedings into one action in the court of appeals. 8 U.S.C. § 1252(b)(9) (2000). Finally, IIRIRA eliminated judicial review of final orders of removal against aliens convicted of certain criminal offenses. 8 U.S.C. § 1252(a)(2)(C) (2000).

In *INS v. St. Cyr*, the Supreme Court, relying on "the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction," 533 U.S. at 298, held that neither AEDPA nor IIRIRA had eliminated habeas corpus review over final orders of removal under 28 U.S.C. § 2241, *id*. at 314. While Section 401 of AEDPA had repealed the grant of habeas jurisdiction in 8 U.S.C. § 1105a(a)(10), "[n]either the title nor the text [of Section 401] makes any mention of 28 U.S.C. § 2241." *Id.* at 309. Likewise, the Court concluded that the provisions limiting judicial review in Section 306 of IIRIRA did not represent a clear and unambiguous repeal of habeas jurisdiction, reasoning that "[i]n the immigration context, 'judicial review' and 'habeas corpus' have historically distinct meanings." *Id*. at 311. The Court noted that if it were clear that St. Cyr – a criminal alien subject to the jurisdiction-stripping provision in 8 U.S.C. § 1252(a)(2)(C) – could raise his claims in another forum, it might be persuaded to interpret the

"zipper" clause in 8 U.S.C. § 1252(b)(9) as precluding habeas review. "But the absence of such a forum, coupled with the lack of a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas of such an important question of law, strongly counsels against adopting a construction that would raise serious constitutional questions." *Id*. at 314.[3]

In response to the Supreme Court's decision in *St. Cyr*, Congress passed the REAL ID Act, § 106, which amended various subsections of 8 U.S.C. § 1252 to explicitly preclude habeas review under 28 U.S.C. § 2241. At the same time, to avoid the "serious constitutional questions" identified by the Supreme Court in *St. Cyr*, Congress restored judicial review in the courts of appeals over "constitutional claims or questions of law" for all aliens, including criminal aliens who had been barred from seeking judicial review under IIRIRA. 8 U.S.C. § 1252(a)(2)(D).

After the REAL ID Act, it is now clear that "a petition for review filed with an appropriate court of appeals in accordance with [8 U.S.C. § 1252] [is] the sole and exclusive means for judicial review of an order of removal," *id.* § 1252(a)(5), and that habeas review is no longer available for claims "arising from any action taken or proceeding brought to remove an alien from the United States," *id*. § 1252(b)(9). In *Ruiz-Martinez*, we held that the REAL ID Act did not, on its face, violate the Suspension Clause because Congress had provided an adequate and effective substitute for habeas review in the form of a petition for review, and that the 30-

---

[3] Although the petitioner in *St. Cyr* was a criminal alien, the Second Circuit subsequently held that habeas jurisdiction under 28 U.S.C. § 2241 existed for non-criminal aliens as well. *Liu*, 293 F.3d at 40 ("The Court's decision in *St. Cyr* does not suggest, expressly or implicitly, that its holding that Congress did not repeal § 2241 by any provision of AEDPA or IIRIRA applies only to criminal aliens.").

day filing period gave an alien a "reasonable opportunity" to seek review of a final order of removal. 516 F.3d at 105-06, 114-17.

Here, however, we are faced with a different situation than in *Ruiz-Martinez*. Petitioners could not have raised their claims regarding the timeliness of their petitions before the BIA because their claims arose after the entry of the final orders of removal. Nor could they have raised such claims in a timely petition in this Court because they only arose upon the expiration of the 30-day period within which they could have filed a timely petition for review. Thus, if the REAL ID Act is interpreted as precluding habeas review over petitioners' claims, there is no forum in which petitioners could seek relief.[4]

Moreover, petitioners raise precisely the type of constitutional claims for which habeas review, or an adequate and effective substitute, is most essential. An ineffective assistance of counsel claim is a constitutional claim that arises under the Due Process Clause of the Fifth Amendment. *Omar v. Mukasey*, 517 F.3d 647, 650 (2d Cir. 2008). Likewise, a claim that the government prevented a petitioner from filing a timely petition for review calls into question

---

[4] The government argues that petitioners could have filed a motion to reopen with the BIA and then, if the BIA denied the motion, petitioners could have filed a petition for review of the order denying the motion to reopen within 30 days. For several reasons, we do not believe that a motion to reopen is an adequate and effective substitute under the Suspension Clause. First, there is no automatic stay of removal while a motion to reopen is pending. The granting of a stay is discretionary, 8 C.F.R. § 1003.2(f), and the motion to reopen is automatically terminated if the alien is removed while the motion is pending, *id.* § 1003.2(d); *Xue Yong Zhang v. Holder*, – F.3d –, No. 09-2628-ag, 2010 WL 3169292, at *8 (2d Cir. Aug. 12, 2010). A procedure that allows the government to unilaterally terminate a petitioner's claim for relief at any time does not meet the requirements of the Suspension Clause. *Boumediene*, 128 S. Ct. at 2259 (adequate and effective substitute to habeas cannot be "subject to manipulation"). Moreover, "[t]he BIA's decision to grant a motion to reopen is purely discretionary." *Burger v. Gonzales*, 498 F.3d 131, 135 (2d Cir. 2007). A mechanism for review that "is wholly a discretionary one" is "an insufficient replacement" for habeas. *Boumediene*, 128 S. Ct. at 2273-74.

whether the government has provided an adequate and effective substitute under the Suspension Clause and, therefore, whether there has been a suspension of the writ. *See Boumediene*, 128 S. Ct. at 2259 (holding that the writ "must not be subject to manipulation by those whose power it is designed to restrain"); *Bounds v. Smith*, 430 U.S. 817, 822 (1977) ("[T]he state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus." (quoting *Ex Parte Hull*, 312 U.S. 546, 549 (1941))). If petitioners lack a forum in which to raise such claims, then we are confronted squarely with the "serious constitutional questions" raised by the Supreme Court in *St. Cyr*. 533 U.S. at 315.

We are mindful of the Supreme Court's admonition in *St. Cyr* that "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems." *Id.* 299-300. Here, the question is whether petitioners' claims that circumstances beyond their control prevented them from filing timely petitions for review can be accurately described as "arising from" their removal proceedings, 8 U.S.C. § 1252(b)(9), or whether such claims may still be brought in a petition under 28 U.S.C. § 2241. If a petition for review is the "sole and exclusive means" for petitioners to make their claims regarding the timeliness of their petitions for review, and if we are jurisdictionally barred from considering such claims because of the 30-day filing requirement, then we would have to decide whether the 30-day deadline, as applied to petitioners, would constitute a suspension of the writ of habeas corpus. Because we conclude that the REAL ID Act can be construed to preserve habeas jurisdiction over petitioners' claims, however, we need not decide that question.

**II.**

-11-

We begin our statutory analysis with the text of the statute itself. *United States v. Nelson*, 277 F.3d 164, 186 (2d Cir. 2002). Section 1252(a)(5) of Title 8 of the United States Code, as amended by the REAL ID Act, provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section.

Section 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

The ACLU urges us to read these provisions as applying only to review of final orders of removal and not to collateral issues such as those presented by petitioners. We agree that petitioners' claims regarding the timeliness of their petitions cannot be characterized as a challenge to an "order of removal" under Section 1252(a)(5). The claims did not arise until after their orders of removal became final and could not have been raised before the BIA, nor would review of such claims require any inquiry into the validity of the removal orders or the agency's actions in ordering petitioners' removal.

Section 1252(b)(9) contains somewhat broader language, applying to any claim "arising from" petitioners' removal proceedings. If we were to adopt an expansive interpretation of this

-12-

provision, petitioners' claims would fall within its scope. Petitioners' claims "arise" from their removal proceedings in the sense that if petitioners had never been placed in removal proceedings, they would not have sought review in this Court, and we would not be confronted with questions regarding the timeliness of their petitions for review. In other words, if the phrase "arising from" is interpreted to mean "bearing a but-for causal relationship to," then petitioners' claims are barred by Section 1252(b)(9).

Alternatively, the phrase "arising from" could be interpreted as a catch-all provision designed to encompass all claims challenging removal orders, in other words, all claims over which the courts of appeals have exclusive jurisdiction under Section 1252(a)(5). The statutory language supports this interpretation. The "zipper" clause is a subsection of Section 1252(b), entitled "Requirements for review of orders of removal," which applies only "[w]ith respect to review of *an order of removal* under subsection (a)(1)." 8 U.S.C. § 1252(b) (emphasis added); *see St. Cyr*, 533 U.S. at 313 ("[Section 1252(b)(9)], by its own terms, does not bar habeas jurisdiction over [claims] *not* subject to judicial review under § 1252(a)(1)." (emphasis in original)).

This narrower interpretation finds support in the legislative history of the REAL ID Act as well. The House Conference Report states that "section 106 [of the REAL ID Act] would not preclude habeas review over challenges to detention that are independent of challenges to removal orders. Instead, the [Act] would eliminate habeas review *only over challenges to removal orders*." H.R. Rep. No. 109-72, at 175 (2005), *reprinted in* 2005 U.S.C.C.A.N. 240, 300 (emphasis added). The Report also evidences an intent by Congress to avoid the Suspension Clause challenges raised by the Supreme Court in *St. Cyr*, making clear that the REAL ID Act

-13-

was intended "to give every alien a fair opportunity to obtain judicial review while restoring order and common sense to the judicial review process." *Id.* at 174; *see also id.* at 175 ("[S]ection 106 would give every alien one day in the court of appeals, satisfying constitutional concerns.").

Given our obligation to construe the statute to avoid constitutional problems and Congress's clear intent to avoid such problems, we have no difficulty concluding that Section 1252(b)(9) precludes habeas review only over direct challenges to final orders of removal. Because, as explained above, petitioners' claims regarding the timeliness of their petitions do not constitute a challenge to the underlying orders of removal, petitioners may seek relief for such claims in the district court pursuant to 28 U.S.C. § 2241.[5]

This conclusion is in line with those of our sister circuits, which have held that district courts retain habeas jurisdiction over claims that are collateral to or independent of removal orders. *See Nnadika v. Att'y Gen.*, 484 F.3d 626, 632 (3d Cir. 2007) (After the REAL ID Act, jurisdiction under 28 U.S.C. § 2241 still exists for claims that do not "directly implicate the order

---

[5] The government argues that we should require petitioners, as a prudential matter, to exhaust their administrative remedies before seeking relief pursuant to 28 U.S.C. § 2241. Claims arising after the BIA has issued a final order of removal may be raised with the BIA by filing a motion to reopen. *In re Compean*, 25 I. & N. Dec. 1, 3 (A.G. 2009). Previously we have held that exhaustion before the BIA is appropriate to "avoid any premature interference with the agency's processes," to "afford[] the parties and courts the benefit of the agency's expertise," and to allow the agency to "compile a record which is adequate for judicial review." *Arango-Aradondo v. INS*, 13 F.3d 610, 614 (2d Cir. 1994) (internal quotation marks omitted). None of these factors counsel in favor of requiring exhaustion of administrative remedies here. Because petitioners' claims arose after the BIA entered its final order of removal, there is no danger that a habeas petition under 28 U.S.C. § 2241 would interfere with the agency's processes. Moreover, the BIA has no particular expertise in deciding claims that concern the filing of a petition for review in this Court. Finally, the district court – unlike this Court – has the ability to develop a factual record, obviating the need for the BIA to do so.

of removal");  *Madu v. Att'y Gen.*, 470 F.3d 1362, 1366 (11th Cir. 2006) (claim that no removal order was entered did not seek review of removal order); *Hernandez v. Gonzales*, 424 F.3d 42, 42 (1st Cir. 2005) (REAL ID Act does not "preclude habeas review over challenges to detention that are independent of challenges to removal orders.") (quoting H.R. Rep. No. 109-72 at 2873)). Further, in *Singh v. Gonzales*, the Ninth Circuit held that a claim that ineffective counsel prevented the filing of a timely petition for review could be brought in a 28 U.S.C. § 2241 petition.  499 F.3d 969, 979 (9th Cir. 2007).[6]

Of course, petitioners' ultimate goal is to seek review of their removal orders, and this they could not do in a habeas petition under the plain meaning of Section 1252.  Habeas review thus would be limited to the narrow question of whether ineffective assistance of counsel or circumstances created by the government prevented petitioners from filing a timely petition for review, and the only relief that petitioners could seek would be an order directing the BIA to reissue the final order of removal so that the 30-day period within which to file a timely petition for review would begin to run anew.[7]  *See Singh*, 499 F.3d at 979.  "In other words, a successful

---

[6]  In an August 27, 2010 letter submitted pursuant to Federal Rule of Appellate Procedure 28(j), the government notified this Court of a recently-decided Ninth Circuit case, *Singh v. Napolitano*, No. 07-16988, 2010 WL 3293696 (9th Cir., Aug. 23, 2010).  On August 31, 2010, the Court-appointed amicus counsel, ACLU Immigrants' Rights Project, responded to the government's letter.  In *Singh v. Napolitano*, the Ninth Circuit required the petitioner, as a prudential matter, to exhaust his administrative remedies before seeking relief pursuant to 28 U.S.C. § 2241.  *Id.* at *3.  For the reasons discussed in footnote 5, *supra*, we disagree with the Ninth Circuit's reasoning.

[7]  The government concedes that federal courts have the authority to direct the BIA to re-issue final orders of removal.  *See, e.g.*, *Dearinger ex rel. Volkova v. Reno*, 232 F.3d 1042 (9th Cir. 2000) (requiring the government to reenter the BIA's order and restart the 30-day filing period).

habeas petition in this case will lead to nothing more than 'a day in court' for [petitioners], which is consistent with Congressional intent underlying the REAL ID Act." *Id.*[8]

Having determined that habeas review is available for petitioners' claims regarding the timeliness of their appeal, the application of the 30-day filing deadline does not raise Suspension Clause concerns. Thus, we lack jurisdiction to hear their petitions for review. *Ruiz-Martinez*, 516 F.3d at 105-06.

### III.

Under 28 U.S.C. § 1631, we are required to transfer a case to another court when (1) we lack jurisdiction over the case; (2) another court would have had jurisdiction at the time of the filing; and (3) transfer is in the interest of justice. *Ruiz v. Mukasey*, 552 F.3d 269, 273 (2d Cir. 2009). Because we conclude that the district courts – but not this Court – have jurisdiction to review petitioners' claims, the first two prongs are met. Transfer pursuant to Section 1631 is in the interest of justice because it "would expedite . . . review" of petitioners' claims. *Id.* at 276. Additionally, because Thompson was removed to Jamaica during the pendency of this appeal, he likely would be barred from filing a new petition in the district court. Section 2241 "requires that the applicant must be 'in custody' when the application for habeas corpus is filed." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). Transferring the petition allows Thompson to pursue his claims.

---

[8] We do not express any opinion on whether the district court should order the BIA to reissue the removal orders or on the merits of petitioners' challenges to their underlying orders of removal.

The only remaining question is which district court has jurisdiction over petitioners'

claims. While the general rule is that venue is proper in "the district of confinement," *Rumsfeld*

*v. Padilla*, 542 U.S. 426, 443 (2004), this rule "does not apply when a habeas petitioner

challenges something *other* than his present physical confinement." *Id.* at 438 (emphasis added).

Here, petitioners do not challenge the fact of their detention, but rather their right to review of

their removal orders. Thus, their claims are not "core [habeas] challenges" of the type subject to

the "district of confinement" rule. *Id.* at 335. Instead, we look to "traditional venue

considerations" to decide where to transfer the petitions. *Braden v. 30th Judicial Circuit Court*,

410 U.S. 484, 493 (1973). Relevant factors include "(1) where all of the material events took

place; (2) where the records and witnesses pertinent to petitioner's claim are likely to be found;

and (3) the convenience of the forum for both the respondent and the petitioner." *Henderson v.*

*INS*, 157 F.3d 106, 128 n.25 (2d Cir. 1998) (quoting *Braden*, 410 U.S. at 493-94) (internal

quotation marks omitted).

For several reasons, we conclude that venue is proper in the districts in which petitioners'

removal proceedings were completed. First, venue for any eventual petition for review will lie

in the Second Circuit. *See* 8 U.S.C. § 1252(b)(2). If we were to find venue proper on the basis

of some other principle, it is possible that we would have to transfer the petitions to a district

court outside of this Circuit, which would not be bound by our decision in this case. If that court

were to conclude that it did not have jurisdiction over petitioners' claims, then our decision –

which is based on the availability of habeas review – would be severely compromised. Second,

it is convenient for both the government and petitioners to litigate the matter entirely within one

Circuit, rather than bouncing around to different courts at different stages of the proceedings.

-17-

This way, all litigation will occur within the Second Circuit, which will aid in the efficient resolution of petitioners' claims. Finally, because petitioners' claims concern the filing of a petition for review in the Second Circuit, the locus of the events always will be in the Second Circuit, even if some material events occurred elsewhere.

Because Luna's removal proceedings were completed in Napanoch, New York, venue is proper for Luna's petition in the Northern District of New York. Thompson's removal proceedings were completed in Hartford, Connecticut; thus, venue is proper for Thompson's petition in the District of Connecticut.

**CONCLUSION**

Pursuant to 28 U.S.C. § 1631, the petition for review in Docket No. 07-3796-ag is hereby **TRANSFERRED** to the United States District Court for the Northern District of New York, and the petition for review in Docket No. 08-4840-ag is hereby **TRANSFERRED** to the United States District Court for the District of Connecticut. Petitioner Luna's removal is **STAYED** pending the resolution of his petition in the district court.