# United States Court of Appeals for the Federal Circuit

---

**BANK OF AMERICA CORPORATION,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES OF AMERICA,**
*Defendant-Appellant*

---

2019-2357

---

Appeal from the United States District Court for the Western District of North Carolina in Nos. 3:17-cv-00546-RJC-DSC, Chief Judge Robert James Conrad, Jr.

---

Decided: July 2, 2020

---

TIMOTHY S. BISHOP, Mayer Brown, LLP, Chicago, IL, argued for plaintiff-appellee. Also represented by MARJORIE MARGOLIES; GEOFFREY M. COLLINS, Croton-on-Hudson, NY; BRIAN WRIGHT KITTLE, New York, NY.

NORAH BRINGER, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by ELLEN PAGE DELSOLE, RICHARD E. ZUCKERMAN.

---

Before LOURIE, LINN, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellee Bank of America Corporation ("Bank of America") filed a complaint against Appellant the United States ("Government") in the U.S. District Court for the Western District of North Carolina ("District Court"), seeking, inter alia, interest on Federal tax overpayments arising under 26 U.S.C. § 6611. The Government moved to sever Bank of America's overpayment interest claims exceeding $10,000 and to transfer them to the U.S. Court of Federal Claims or, alternatively, to dismiss them for lack of subject matter jurisdiction. The District Court denied the Government's motion. *See Bank of Am. Corp. v. United States* ("*Order*"), No. 3:17-cv-546-RJC-DSC, 2019 WL 2745856, at *4 (W.D.N.C. July 1, 2019) (Order); *see also Bank of Am. Corp. v. United States* ("*Recommendation*"), No. 3:17-cv-546-RJC-DSC, 2019 WL 1349687 (W.D.N.C. Jan. 10, 2019).

The Government appeals. We have jurisdiction pursuant to 28 U.S.C. § 1292(d)(4)(A). We vacate and remand.

BACKGROUND

In January 2009, Bank of America acquired Merrill Lynch & Co., Inc. ("Merrill Lynch"). J.A. 13. In October 2013, Merrill Lynch "merged with and into" Bank of America. J.A. 13. In September 2017, Bank of America filed a complaint against the Government in the District Court, J.A. 1217, which, as amended, sought to recover overpaid interest on Federal tax underpayments as well as additional interest on Federal tax overpayments arising under 26 U.S.C. §§ 6601 and 6611, respectively, J.A. 10–22 (Third Amended Complaint); *see* 26 U.S.C. §§ 6601(a) ("If any amount of tax . . . is not paid . . . , interest on such amount . . . shall be paid for the period from such last date to the date paid."), 6611(a) ("Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax[.]"). Relevant here, Bank of America sought to

recover additional overpayment interest arising from Federal tax overpayments made by Merrill Lynch ("the Merrill Lynch overpayment interest claims"). J.A. 10–11.

In September 2018, the Government moved to sever the Merrill Lynch overpayment interest claims exceeding $10,000, and requested that the District Court transfer them to the Court of Federal Claims or, alternatively, dismiss them for lack of subject matter jurisdiction. J.A. 1093–94; *see* J.A. 1088–114 (Brief in Support of Motion to Transfer or, in the Alternative, to Dismiss for Lack of Subject Matter Jurisdiction), 1117 ("Table Summarizing Relief Requested").[1, 2]

---

[1]    The parties distinguish overpayment interest claims "that accompany tax refund claims," from those "for interest only," the latter of which the parties refer to as "stand-alone" overpayment interest claims. Appellant's Br. 1–2 n.1; *see, e.g.*, *id.* at 1; Appellee's Br. 3. While it is unclear from the record whether *all* of the Merrill Lynch overpayment interest claims are "stand-alone" claims, *see* J.A. 18 (Bank of America explaining only that "[t]he amounts sought in [its] Third Amended Complaint do not include" "*certain* refunds for Merrill Lynch" (emphasis added)), the parties agree that each of the overpayment interest claims sought to be severed by the Government, is a "stand-alone" claim, *see* Appellant's Br. 1; Appellee's Br. 3.

[2]    Presumably, the Government did not move to transfer or dismiss the Merrill Lynch overpayment interest claims not exceeding $10,000, based on the Government's understanding that district courts have jurisdiction concurrent with the Court of Federal Claims over overpayment interest claims not exceeding $10,000. *See* Appellant's Br. 1–2 n.1 (asserting that "[u]nder 28 U.S.C. § 1346(a)(2), overpayment interest claims not exceeding $10,000 may be brought in district court"); *id.* at 8 (similar); *see also* 28 U.S.C. § 1346(a)(2) (providing, in relevant part,

In January 2019, the Magistrate Judge assigned to the case found that "[t]he weight of authority . . . has upheld" the conclusion that district courts have "subject matter jurisdiction over overpayment interest claims pursuant to 28 U.S.C. § 1346(a)(1)[,]" *Recommendation*, 2019 WL 1349687, at \*2 (citing *E.W. Scripps Co. v. United States*, 420 F.3d 589, 596–97, 598 (6th Cir. 2005)), and recommended that the Government's Motion be denied, *id.* at \*3. In July 2019, the District Court affirmed and adopted the Magistrate Judge's recommendation, and denied the Government's Motion. *Order*, 2019 WL 2745856, at \*4.

## DISCUSSION

The sole issue on appeal is whether 28 U.S.C. § 1346(a)(1) provides district courts with jurisdiction over "stand-alone" overpayment interest claims exceeding $10,000. *See* Appellant's Br. 1; Appellee's Br. 3; *see also Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1039 (Fed. Cir. 2016) (en banc) (explaining that our "function [i]s limited to deciding" only those "issues raised on appeal by the parties"). Because the plain language of § 1346(a)(1) excludes overpayment interest claims, we hold that it does not.

### I. Standard of Review and Legal Standard

"Under 28 U.S.C. § 1292(d)(4)(A), our jurisdiction is restricted to a review of [a] district court's denial of [a] motion to transfer . . . to the Court of Federal Claims. We conduct this review de novo." *Souders v. S.C. Pub. Serv. Auth.*, 497 F.3d 1303, 1307 (Fed. Cir. 2007) (footnote omitted); *see* 28 U.S.C. § 1292(d)(4)(A) (providing, in relevant part, that

---

that "district courts shall have original jurisdiction, concurrent with the . . . Court of Federal Claims, of . . . [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon any Act of Congress").

we "have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States . . . granting or denying, in whole or in part, a motion to transfer an action to the . . . Court of Federal Claims").

"Statutory interpretation is an issue of law that we review de novo." *Power Integrations, Inc. v. Semiconductor Components Indus., LLC*, 926 F.3d 1306, 1313 (Fed. Cir. 2019) (citation omitted). "When [construing] any statute, we look first to the statutory language." *Strategic Hous. Fin. Corp. of Travis Cty. v. United States*, 608 F.3d 1317, 1323 (Fed. Cir. 2010) (citing *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009); *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)); *see Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) ("We . . . begin and end our inquiry with the text, giving each word its 'ordinary, contemporary, common meaning.'" (quoting *Walters v. Metro. Ed. Enters., Inc.*, 519 U.S. 202, 207 (1997))). If the statutory language is clear, "and the legislative history does not show that congressional intent was clearly contrary to the section's apparent meaning, th[e] meaning of the statute controls, and there is nothing else for us to review." *DeCosta v. United States*, 987 F.2d 1556, 1558 (Fed. Cir. 1993) (footnote and citation omitted). Our construction "must," however, "to the extent possible, ensure that the statutory scheme is coherent and consistent." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 222 (2008).

"If a taxpayer overpays its taxes, the [Internal Revenue Service ('IRS')] owes the taxpayer interest on that amount[.]" *Energy E. Corp. v. United States*, 645 F.3d 1358, 1359 (Fed. Cir. 2011); *see* 26 U.S.C. § 6611(a). District courts

> have original jurisdiction, concurrent with the . . . Court of Federal Claims, of . . . [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any

penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]

28 U.S.C. § 1346(a)(1).

## II. The District Court Improperly Concluded that 28 U.S.C. § 1346(a)(1) Provides Districts Courts with Jurisdiction over Overpayment Interest Claims

The District Court concluded that 28 U.S.C. § 1346(a)(1) provides district courts with jurisdiction over overpayment interest claims. *See Order*, 2019 WL 2745856, at *1. The District Court found the U.S. Court of Appeals for the Sixth Circuit's "rationale in *Scripps* [to be] persuasive[,]" *id.* at *2 (citing *Scripps*, 420 F.3d at 597), and like "most courts that have considered the issue[,]" determined that "the broad language of § 1346(a)(1)—specifically the phrase 'any sum'—includes overpayment interest[,]" *id.* Thus, the District Court concluded, with minimal additional analysis, that it had jurisdiction over the Merrill Lynch overpayment interest claims, including those exceeding $10,000. *See id.* at *4.[3] The Government contends that the District Court erred, however, as "*Scripps* rests on flawed reasoning[,]"and instead argues that we should adopt the U.S. Court of Appeals for the Second Circuit's rationale in *Pfizer Inc. v. United States*, 939 F.3d 173 (2d Cir. 2019), to reach the opposite conclusion, Appellant's Br. 26–27. For all the reasons discussed below, we agree with the Government.

---

[3]    Although asked repeatedly to explain the lack of analysis in the District Court's Order, counsel for Bank of America failed to provide any explanation. *See* Oral Arg. at 18:43–21:05, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-2357.mp3.

### A. The Plain Language of 28 U.S.C. § 1346(a)(1) Excludes Overpayment Interest Claims

When interpreting a statute, we begin with the statutory language. *See Strategic Hous.*, 608 F.3d at 1323. To fall within the scope of § 1346(a)(1), Bank of America's overpayment interest claims must be an "action . . . for the recovery" of one of three things: (1) an "internal-revenue tax alleged to have been erroneously or illegally assessed or collected"; (2) a "penalty claimed to have been collected without authority"; or (3) "any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]" 28 U.S.C. § 1346(a)(1). We agree with the Second Circuit's analysis in *Pfizer*—and neither party disputes—that "[t]he first two categories listed in § 1346(a)(1) plainly do not apply in this case[,]" as overpayment interest claims are neither an "internal-revenue tax" nor a "penalty." *Pfizer*, 939 F.3d at 176; *see id.* at 176–77. *See generally* Appellant's Br.; Appellee's Br.

Turning to the third category of § 1346(a)(1), again, we agree with the Second Circuit, and conclude that the plain language of the statute dictates that this category—and particularly the term "any sum"—refers to amounts that have been previously paid to, or collected by, the IRS, which excludes overpayment interest. *See Pfizer*, 939 F.3d at 178 ("Th[e] statute contemplates an amount of money— a 'sum'—previously assessed or retained by the [G]overnment[.]"); *id.* at 179 ("Overpayment interest is not such an amount, and so it does not fall with the meaning of 'any sum[.]'"). The text of § 1346(a)(1) requires that the "sum" sought to be recovered must "*have been* excessive or . . . wrongfully collected[.]" 28 U.S.C. § 1346(a)(1) (emphasis added). Congress's use of the present-perfect tense "have been," "indicates that the 'sum' must have been 'excessive' or 'wrongfully collected' at some point in the past[.]" *Pfizer*, 939 F.3d at 179; *see* THE CHICAGO MANUAL OF STYLE § 5.132 (17th ed. 2017) ("The present-perfect tense . . . denotes an act, state, or condition that is now completed or continues

up to the present[.]"). Additionally, while the term "any sum" "in isolation" may be "susceptible of multiple and wide-ranging meanings[,]" in the context of § 1346(a)(1), the term is properly "narrowed by the commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008). Specifically, "any sum" is recited within § 1346(a)(1) as the last in a list of "terms that plainly refer to amounts [a] taxpayer has previously paid[,]" namely, taxes and penalties as recited in the first two categories of § 1346(a)(1). *Pfizer*, 939 F.3d at 178–79. Construing "any sum" "in harmony with these more specific terms" thus reinforces the conclusion that "any sum" refers to an amount that has been "excessive" or "wrongfully collected" at some point in the past. *Id.* at 178. Accordingly, the plain language of § 1346(a)(1) dictates that the term "any sum" refers to amounts that have been previously paid to, or collected by, the IRS, which, overpayment interest "[b]y its nature, . . . is not[.]" *Id.* at 179; *see Int'l Bus. Machines Corp. v. United States*, 201 F.3d 1367, 1372 (Fed. Cir. 2000) ("If th[e] language [of the statute] is clear and unambiguous, then it controls[.]").

B. The Plain Meaning of 28 U.S.C. § 1346(a)(1) Is Consistent with the Tax Code's Broader Statutory Scheme

The conclusion that § 1346(a)(1) does not cover overpayment interest claims is consistent with the tax code's broader statutory scheme, *see Ali*, 552 U.S. at 222, particularly the tax code's disparate treatment of overpayment interest, *see Alexander Proudfoot Co. v. United States*, 454 F.2d 1379, 1384 (Ct. Cl. 1972) (explaining that the "[tax] [c]ode deals quite differently with . . . interest payable by the Government on overpayments"). For example, while the tax code explicitly provides that underpayment interest is to be treated as a tax, *see* 26 U.S.C. § 6601(e)(1) (entitled, "Interest treated as tax[,]" and providing, in relevant part, that underpayment interest "shall be assessed, collected,

and paid in the same manner as taxes"), the code grants no similar consideration to overpayment interest, *see, e.g.*, *id.* § 6611(a) (providing that "[i]nterest shall be allowed and paid upon any overpayment in respect of any internal revenue tax" without requiring that such interest be treated as a tax).  Additionally, while the tax code prescribes a limitations period within which a claim for credit or refund, including claims for underpayment interest, must be filed, *see id.* § 6511(a) (providing a limitations period for filing a "[c]laim for credit or refund of an overpayment of any tax imposed"); *see also United States v. Dalm*, 494 U.S. 596, 601 (1990) (explaining that "§ 1346(a)(1) must be read in conformity with" § 6511(a)), no such limitations period is provided for the recovery of overpayment interest.  Instead, overpayment interest claims are governed by "the general six-year [limitations period] that applies to suits against the [G]overnment[.]"  *Gen. Elec. Co. & Subsidiaries v. United States*, 384 F.3d 1307, 1312 (Fed. Cir. 2004); *see* 28 U.S.C. § 2401(a) (providing that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues").

Finally, the Supreme Court has instructed that § 1346(a)(1) "must [also] be read in conformity with" 26 U.S.C. § 7422(a).  *Dalm*, 494 U.S. at 601.  Section 7422(a) recites language identical to that at issue in § 1346(a)(1).[4]  As the District Court noted, "a plain reading

---

[4]    Section 7422(a) provides that

[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or

of the qualifying header in § 7422(a)—'No suit prior to filing claim for refund'—explicitly limits [the statute] to refund suits." *Order*, 2019 WL 2745856, at *3. While the District Court found it significant "that § 1346(a)(1) includes no such heading[,]" *id.*, we find Congress's use of identical language more telling, *see Sorenson v. Sec'y of the Treasury.*, 475 U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning." (internal quotation marks and citation omitted)); *see also Caminetti v. United States*, 242 U.S. 470, 489 (1917) (explaining that "the title of an act cannot overcome the meaning of plain and unambiguous words used in its body"). Accordingly, the conclusion that § 1346(a)(1) does not cover overpayment interest claims is consistent with the tax code's broader statutory scheme.[5]

---

credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (emphasis added).

[5]    Apart from the tax code, Congress requires district courts to allow overpayment interest "[i]n any judgment" awarding a refund for tax overpayment. 28 U.S.C. § 2411. Thus, if § 1346(a)(1) were construed to cover overpayment interest claims, which, by definition, include overpayment interest claims that accompany tax refund claims, § 2411 would be rendered essentially superfluous. *See Ishida v. United States*, 59 F.3d 1224, 1230 (Fed. Cir. 1995) ("The rules of statutory construction require a reading that avoids rendering superfluous any provision of a statute.").

C. The Legislative History of 28 U.S.C. § 1346(a)(1) Does Not Clearly Contradict the Plain Meaning of the Statute[6]

Turning to the legislative history of § 1346(a)(1), we discern "no 'clearly expressed legislative intent . . . ' that would warrant a different construction" than that dictated by the statute's plain language. *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 261 (1994) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993)); *see DeCosta*, 987 F.2d at 1558. Rather, the legislative history is, at best, ambiguous, lacking any "clear expression" of congressional intent to include overpayment interest claims within the scope § 1346(a)(1). *Aaron v. Sec. & Exch. Comm'n*, 446 U.S. 680, 697 (1980); *see Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011) ("We will not . . . allow[] ambiguous legislative history to muddy clear statutory language.").

During a hearing before a subcommittee ("the Subcommittee") of the U.S. Senate Committee on the Judiciary, a witness raised the question of whether Congress should further amend § 1346(a)(1) to include overpayment interest claims. *See Civil Actions in District Courts to Recover Taxes: Hearing Before a Subcommittee of the S. Comm. on the Judiciary on S. 252* ("*Senate Hearing*"), 83rd Cong. 12 (1953) (statement of J. G. Sourwine, counsel to the Subcommittee) ("[T]here is a question involved of whether there should be an amendment of [the] statute . . . , in order to cover . . . th[e] . . . authority to sue for interest withheld[.]").

---

[6] "Although we do not believe the statutory language [of § 1346(a)(1)] is ambiguous, we nonetheless consider the legislative history" addressed by the parties on appeal. *California v. Am. Stores Co.*, 495 U.S. 271, 285 (1990). *Compare* Appellant's Br. 54–58 (arguing that "[t]he legislative history supports limiting § 1346(a)(1) to refund claims"), *with* Appellee's Br. 35–43 (arguing that "[t]he legislative history of [§] 1346(a)(1) confirms that it grants jurisdiction for overpayment interest claims").

The Subcommittee, however, left this question unanswered. Indeed, despite recommendations to "redraft[]" § 1346(a)(1) to make the statute's scope—and thus, Congress's intent—"clear" concerning the inclusion of claims for interest, *Senate Hearing* at 11 (statement of W. A. Sutherland, on behalf of the Tax Section, American Bar Association); *see, e.g., id.* (statement of W. A. Sutherland) (expressing his desire to "see [§ 1346(a)(1)] broadened . . . to cover" interest claims by the use of "some other" language), 14 (statement of George H. Foster) (proposing that "a suit for . . . interest . . . might be . . . covered" under § 1346(a)(1) "with [the] language . . . used to confer jurisdiction on the Court of Claims"), the statute was not further amended. Whether the Subcommittee "thought the[se] [recommendations] unwise . . . or unnecessary, we cannot tell; accordingly, no inference can properly be drawn from [its] failure . . . to act." *United States v. Price*, 361 U.S. 304, 312 (1960).

On appeal, much of Bank of America's arguments concern the import of witness testimony before the Subcommittee. *See, e.g.*, Appellee's Br. 21–23, 40–41. "Such testimony[,]" however, "should not be accorded undue weight as an indication of legislative intent, . . . since the views expressed by witnesses at congressional hearings are not necessarily the same as those of the legislators ultimately voting on the bill." *Austasia Intermodal Lines, Ltd. v. Fed. Mar. Comm'n*, 580 F.2d 642, 645 (D.C. Cir. 1978) (citing *McCaughn v. Hershey Chocolate Co.*, 283 U.S. 488, 493–94 (1931) (explaining that "statements . . . made to committees of Congress . . . are without weight in the interpretation of a statute")).[7] Moreover, the witness

---

[7]    To the extent Bank of America relies on statements of a legislator, those statements are irrelevant to the issue raised on appeal. *See* Appellee's Br. 8–10 (quoting 61 CONG. REC. 7444, 7506 (1921) (statement of Sen. Jones)

testimony on which Bank of America relies is inconclusive, with the witnesses disagreeing as to the relevant scope of § 1346(a)(1). *Compare, e.g.*, *Senate Hearing* at 14 (statement of W. A. Sutherland) (explaining that he could "hardly see how" a taxpayer could bring a claim for recovery of interest in a district court "under the language of the statute"), *with id.* (statement of Maso B. Leming, Assistant Chief Counsel, Bureau of Internal Revenue) (agreeing that under the language of § 1346(a)(1) "a taxpayer could bring his action for the recovery of interest"). Bank of America also overstates the significance of a letter sent to the Subcommittee, *see* Appellee's Br. 15, 22, purporting to show that district courts had previously exercised jurisdiction over "a number of suits . . . for interest[,]" *Senate Hearing* at 12 (statement of Maso B. Leming). In fact, the letter

---

(not addressing stand-alone overpayment interest claims, but explaining, in relevant part, that he proposed to amend the jurisdictional provision that is now § 1346(a)(1), to "remedy th[e] situation" caused by the Supreme Court's decision in *Smietanka v. Indiana Steel Co.*, 257 U.S. 1 (1921), holding that a suit against a deceased tax collector could not be maintained, "by providing that . . . claimant[s] may sue the United States" in district courts)); *see also Flora v. United States*, 357 U.S. 63, 71–72 (1960) (explaining that the "narrow-stated purpose" of Senator Jones's proposed amendment "refutes any suggestion that Congress intended . . . to expand or even to restate the jurisdiction of . . . [d]istrict [c]ourt[s] in refund suits"). Additionally, the statements cited by Bank of America concern "the views of [only] a single legislator," which "are not controlling." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 385 (2012); *see Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 (1980) ("[O]rdinarily even the contemporaneous remarks of a single legislator who sponsors a bill are not controlling in analyzing legislative history.").

identified only six cases concerning claims "for the recovery of interest[.]" *Senate Hearing* at 13. Of these six cases, the "district court declined jurisdiction" in two them, and of the remaining four cases, the letter acknowledged that in "only [two] cases . . . was the [c]ourt's jurisdiction questioned." *Id.* In a first of these two cases, the letter explained that the district court "assumed jurisdiction" under a since-superseded statute, and that in the second, the district court "entertained jurisdiction" under a different subsection entirely, namely, 28 U.S.C. § 1346(a)(2). *Id.* The letter is, at best, unhelpful.

In sum, on this record, we discern "no . . . 'clearly expressed legislative intent . . . contrary'" to the plain language of § 1346(a)(1). *Scheidler*, 510 U.S. at 261 (quoting *Reves*, 507 U.S. at 177); *see DeCosta*, 987 F.2d at 1558; *see also Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 634 n.9 (2018) ("Although the parties paint dueling portraits of the legislative history, the murky waters of the Congressional Record do not provide helpful guidance in illuminating Congress's intent in this case."). Accordingly, the plain meaning of § 1346(a)(1) controls. *See Aaron*, 446 U.S. at 697; *Milner*, 562 U.S. at 572.

## D. The District Court's Reliance on *Scripps* Was Misplaced

The District Court's reliance on *Scripps* was misplaced. In *Scripps*, the Sixth Circuit did not engage in the "word-by-word analysis" we endorsed when construing the identical language of § 7422(a). *Strategic Hous.*, 608 F.3d at 1326; *see id.* (explaining that "[a] word-by-word analysis" of § 7422(a) "demonstrates that a claim to recover an arbitrage rebate would be a claim to recover 'any sum alleged to have been excessive or in any manner wrongfully collected'"). Instead, the Sixth Circuit considered the phrase "excessive sum," which is not used in the entirety of § 1346. *See Scripps*, 420 F.3d at 597 ("Moreover, the '*excessive sum*' *phrase* does encompass suits seeking recovery of

statutory interest on overpayments . . . . If the Government does not compensate the taxpayer for the time-value of the tax overpayment, the Government has retained more money than it is due, i.e., an '*excessive sum*.'" (emphases added)); *see also* 28 U.S.C. § 1346(a)(1) (providing district courts with jurisdiction over "any sum alleged to *have been* excessive[,]"not over any "excessive sum" (emphasis added)).

Moreover, as the Second Circuit recognized in *Pfizer*, the Sixth Circuit's conclusion in *Scripps*—as with Bank of America's arguments on appeal—is based, in large part, on an incorrect reading of *Flora v. United States* ("*Flora II*"), 362 U.S. 145 (1960). In *Flora II*, the Supreme Court explained that "'any sum,' instead of being related to 'any internal-revenue tax' and 'any penalty,' may refer to amounts which are neither taxes nor penalties[,]" and that "[o]ne obvious example of such a 'sum' is *interest*." *Id.* at 149 (emphasis added); *see Scripps*, 420 F.3d at 597 (stating that, in *Flora II*, the "the Supreme Court [held] that the term 'any sum' includes interest"). We agree with the Second Circuit, however, that "[r]ead properly," the Supreme Court in *Flora II* "plainly had additional tax assessments in view when it mention[ed] 'interest' as a 'sum' under § 1346(a)(1)." *Pfizer*, 939 F.3d at 178. Indeed, the Supreme Court found "it . . . significant that many old tax statutes described the amount which *was to be assessed* under certain circumstances as a 'sum' to be added to the tax, simply as a 'sum,' as a 'percentum,' or as 'costs.'" *Flora II*, 362 U.S. at 149–50 (emphasis added). Thus, "*Flora* [*II*] is inapplicable to the question we face." *Pfizer*, 939 F.3d at 177.

Accordingly, the District Court improperly concluded that § 1346(a)(1) provided it with jurisdiction over the Merrill Lynch overpayment interest claims. Rather, the Court of Federal Claims has exclusive jurisdiction over those claims, *see* 28 U.S.C. § 1491(a)(1) (providing, in relevant part, that "[t]he . . . Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the

United States founded . . . upon . . . any Act of Congress"); *cf. Gen. Elec.*, 384 F.3d at 1312 (explaining that overpayment interest is "a general debt of the [G]overnment, which is not subject to the special rules associated with the adjustment and collection of obligations under the tax laws"), and therefore, those claims must be severed and transferred.

## CONCLUSION

We have considered Bank of America's remaining arguments and find them unpersuasive. Accordingly, the Order of the U.S. District Court for the Western District of North Carolina is

**VACATED AND THE CASE IS REMANDED**